## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **v.** | * | **Crim. No. DLB-15-277-3** |
| | | **(Civ. No. DLB-19-3364)** |
| **VICTOR OYEWUMI OLOYEDE,** | * | |
| **Defendant.** | * | |

### MEMORANDUM OPINION

Self-represented petitioner Victor Oyewumi Oloyede filed a motion to vacate, set aside, and correct his conviction and sentence pursuant to 28 U.S.C. § 2255. ECF 922 (motion).[1] Oloyede claims his trial and appellate counsel were constitutionally ineffective. The government opposes the motion. ECF 949. No hearing is necessary. *See* 28 U.S.C. § 2255(b); Rule 8(a), *Rules Governing § 2255 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2021). For the following reasons, Oloyede's motion is denied. A certificate of appealability shall not issue.

### I.    Background

On November 21, 2016, after a 17-day jury trial, a jury found Oloyede and three codefendants guilty of conspiracy to commit wire fraud, conspiracy to commit money laundering, and aggravated identity theft. ECF 363 (verdict). Oloyede was sentenced to a total of 234 months of imprisonment. ECF 429 (judgment). On direct appeal, the Fourth Circuit described the case as involving "an extensive online dating fraud scheme that induced elderly victims to transfer money to the defendants' bank accounts based on postured romantic relationships." *United States v. Oloyede*, 933 F.3d 302, 306 (4th Cir. 2019).

> At trial, the government's evidence included testimony from 11 victims of the fraud scheme, as well as a daughter of a victim who had recently died. The

---

[1] The ECF numbers cited in this memorandum opinion refer to the documents filed in Oloyede's criminal case.

victims testified as to how they had formed what they thought were meaningful long-distance relationships with a person they met online and had eventually transferred significant sums of money for various reasons as requested by the person, only to realize later that they had been defrauded. These victims' testimony showed that, between November 2012 and April 2014, five of them sent a total of approximately $140,000 to two business bank accounts controlled by [codefendant] Ogundele; that, during a six-month period in 2012, five of them sent a total of $138,000 to two bank accounts controlled by Oloyede, with all but $3,000 of that going to a single business account; and that, in July 2014, one victim deposited $5,000 in cash into an account in the name of [codefendant] Mojisola [Popoola], who then promptly wrote a check for the same amount to a company controlled by her husband, Ogundele. In addition, the government's evidence showed that some of this and other money was transferred to accounts controlled by [codefendant] Babatunde [Popoola]. For instance, on the same day in October 2012 that one victim deposited $20,000 into Oloyede's business account, $10,000 was transferred from that account to an account that Babatunde controlled but was in the name of one of his sisters.

The government also presented testimony from employees of Bank of America, Capital One, and Wells Fargo regarding activity in approximately a dozen of the defendants' bank accounts, almost all of which had been closed by the banks during the course of the conspiracy. Bank records not only showed numerous wire transfers and cash deposits from the victims who testified but also showed other suspicious large cash deposits made from States throughout the country. For example, bank records from Mojisola's Bank of America account, which had been closed in August 2014, showed that it had received significant cash deposits or teller transfers from persons in Florida, North Carolina, Georgia, Michigan, and Tennessee and that the funds were then quickly withdrawn or transferred. The records also showed that Mojisola's account received several large wire transfers in 2011 from her half-brother, Mukhtar Haruna—a Nigerian national and resident who was indicted with the others but never arraigned. These funds were then transferred into an account controlled by Mojisola's husband, Ogundele.

Finally, the government presented testimony from numerous FBI agents about evidence recovered from search warrants of the defendants' homes, phones, and email accounts. FBI agents also testified to post-arrest statements made by Ogundele, Oloyede, and Babatunde. And an FBI forensic accountant created charts detailing certain activity in the defendants' bank accounts from 2011 through 2014 and presented those charts to the jury at trial.

After the government rested and the district court denied the defendants' motions for judgment of acquittal, the defendants called a number of witnesses, and Oloyede and Babatunde both testified in their own defense. Generally, their theory of the case was that Haruna had made them believe that the money coming into their bank accounts was to purchase cars for export to Nigeria, thus blaming Haruna for the entire scheme. They also placed blame on Ogundele.

> The jury convicted all four defendants on all counts, and the district court thereafter sentenced Ogundele and Oloyede each to 234 months' imprisonment, Babatunde to 144 months' imprisonment, and Mojisola to 18 months' imprisonment.

*Id.* at 307–08.

On direct appeal, Oloyede challenged the trial court's admission of a series of charts detailing deposits into the defendants' bank accounts; the government's "cherry-picking" of certain records as a violation of his right to a fair trial; a willful blindness jury instruction; and the court's decision to hold him accountable for $1.6 million in restitution. *See generally id.* The Fourth Circuit denied each of his claims. *Id.* at 319. Oloyede timely filed his § 2255 motion on November 22, 2019. ECF 922. Separately, he filed a motion for compassionate release, ECF 936, which this Court denied on October 14, 2020, ECF 975. He moved for reconsideration of that decision, ECF 993, which this Court denied on May 7, 2021, ECF 1009. This case was transferred to me on November 30, 2022 following the retirement of the Honorable Paul W. Grimm.

## II.    Standard of Review

Section 2255 allows a prisoner in federal custody to move to vacate, set aside, or correct his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a). The Court must hold an evidentiary hearing on such a motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," in which case dismissal is appropriate. *Id.* § 2255(b); *see United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021).

Generally, a petitioner's failure to raise a claim on direct appeal bars consideration of the claim in a § 2255 motion. *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006)). Courts may only consider procedurally defaulted claims "when a habeas applicant can demonstrate cause and prejudice, or actual innocence." *Id.* Claims of ineffective assistance of counsel are an exception to this rule, as such claims ordinarily are not litigated on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (noting ineffective assistance of counsel claims are considered on direct appeal "only where the record conclusively establishes ineffective assistance").

## III.    Discussion

Oloyede asserts in each of his five claims that he received ineffective assistance of counsel in violation of the Sixth Amendment. To help ensure our adversarial system produces just results, the Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the familiar two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022). That test requires the petitioner to show that (1) his counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *Freeman*, 24 F.4th at 326. Ultimately, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To satisfy the deficient performance prong, a petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Id.* at 688. Performance is evaluated based on "'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 690); *see Carthorne*, 878 F.3d at 465. The "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. On collateral review in particular, "judicial scrutiny of counsel's performance must be highly deferential." *Carthorne*, 878 F.3d at 465 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). It generally is sufficient for Sixth Amendment purposes "when counsel provides reasonably effective assistance, including demonstrating legal competence, doing relevant research, and raising important issues." *Id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 691. Conversely, counsel's "ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner cannot show prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991–92 (4th Cir. 2015) (citing *Strickland*, 466 U.S. at 697). Because failing either prong is fatal to a petitioner's claim, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Oloyede's claims are substantially the same as claims raised by his codefendant Babatunde Popoola in another § 2255 motion filed around the same time. *Compare* ECF 922 *with* ECF 924. Judge Grimm denied Popoola's motion in an unpublished opinion. ECF 992. The Fourth Circuit declined to issue Popoola a certificate of appealability. *United States v. Popoola*, No. 21-6-58, 2022 WL 7918014 (4th Cir. Oct. 14, 2022) (unpublished). The Court finds Judge Grimm's reasoning persuasive and incorporates his analysis where appropriate.

## A. Claim One

Oloyede argues first that his trial and appellate counsel were constitutionally ineffective because they failed to advance the claim that the trial court lacked subject matter jurisdiction over Count Two, the money laundering conspiracy offense. Count Two of the indictment charged that Oloyede and others

> did knowingly combine, conspire, and agree with each other, and others known and unknown to the Grand Jury[,] to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity—*to wit, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349*—while knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity[.]

ECF 1, at 11–12 (emphasis added).  Oloyede takes issue with the italicized phrase.  He argues that his trial counsel should have moved to dismiss Count Two because § 1349 is not an offense that is specified in the money laundering conspiracy statute, 18 U.S.C. § 1956(h), and that his appellate counsel should have raised the issue on appeal.  This claim is identical to one raised by Popoola and rejected by Judge Grimm, with the caveat that Popoola abandoned the claim with respect to his trial counsel before Judge Grimm's decision.  *See* ECF 992, at 4.

The government concedes, as it did before Judge Grimm in response to Popoola's petition, that § 1349 (wire fraud conspiracy) is not listed in the money laundering conspiracy statute.  It notes that 18 U.S.C. § 1343 (substantive wire fraud) is.  *See* 18 U.S.C. §§ 1956(c)(7), 1961(1).  It argues that trial counsel's performance was not deficient because, under the prevailing law, the mistake was not substantive and did not concern an essential or material element of the charge, so the prosecution could have responded to a motion to dismiss the charge by moving to amend the indictment or seeking a superseding indictment from the grand jury.  *See United States v. Bledsoe*, 898 F.2d 430 (4th Cir. 1990) ("Courts following the modern rule allow an amendment if it 'is not substantial, it is sufficiently definite and certain, the accused is not taken by surprise, and any evidence the defendant had before the amendment would be equally available to him after the amendment.'") (quoting *United States v. Kegler*, 724 F.2d 190, 194 (D.C. Cir. 1984)).  The government also argues Oloyede cannot establish prejudice because even if Count Two had been dismissed, Judge Grimm still could have imposed the same sentence based solely on the remaining counts of conviction, and he stated at sentencing that the sentence he imposed was appropriate for Oloyede's conduct.

Judge Grimm rejected Popoola's identical claim because Popoola failed to establish prejudice.  ECF 992, at 6–8.  Judge Grimm reasoned that, if there is an error in an indictment,

"[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." *Id*. (citing Fed. R. Crim. P. 7(c)(2)).  Fatal errors are those related to "substance" and not those "of form only."  *United States v. Camp*, 541 F.3d 737, 739–40 (8th Cir. 1976) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)).  Popoola did not claim that he was either misled or prejudiced by the wording of the indictment; his attack focused on form over substance.  None of the cases Popoola cited compelled a different conclusion.  In *United States v. Liersch*, No. 04CR02521, 2005 WL 6414047 (S.D. Cal. May 2, 2005), the defendant argued that his indictment alleged a conspiracy to commit mail fraud and interstate transportation of stolen property, which did not qualify as specified unlawful activities under 18 U.S.C. § 1956(a)(1)(B)(i).  *Id.* at *11.  The court agreed that conspiracy to commit those offenses did not meet that definition, but it nonetheless denied relief because the indictment still included specific allegations of standalone substantive acts of wire fraud.  *Id.* at *10–11.  The same was true in Popoola's case.  The other cases cited by Popoola were racketeering cases.  *See United States v. Weisman*, 624 F.2d 1118 (2d Cir. 1980); *Zola v. Gordon*, 685 F. Supp. 354 (S.D.N.Y. 1988); *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499 (N.D. Ill. 1990).  In these cases as well, the courts looked beyond the incorrect identification of conspiracy as a predicate act to racketeering and considered whether other predicate acts were alleged and proven.  "Because substantive acts of wire fraud were sufficiently alleged and proven at trial," Judge Grimm concluded that Popoola had failed to establish prejudice.  ECF 992, at 8.

So too here.  Oloyede cites the same cases and makes the same arguments as Popoola.  For the reasons stated by Judge Grimm, Oloyede has not established a reasonable probability that a motion to dismiss Count Two of the indictment would have led to a different outcome at trial or

that this claim would have succeeded on appeal.  The mistake in the indictment is not substantive in nature but rather one of form, and the government would have been able to amend the indictment or seek a superseding indictment correctly identifying the specified unlawful activities that ultimately were proven at trial.

Oloyede cannot establish prejudice under *Strickland*.  His ineffective assistance of counsel claim for failure to move to dismiss Count Two is denied.

### B.  Claim Two

Oloyede next argues that the money laundering conspiracy and wire fraud conspiracy charges based on the same financial transactions created a "merger problem" under *United States v. Santos*, 554 U.S. 507 (2008), and *United States v. Halstead*, 634 F.3d 270 (4th Cir. 2011).  In other words, he argues that Count Two (money laundering conspiracy) should have merged with Count One (wire fraud conspiracy) and that his trial and appellate counsel were ineffective for failing to raise that argument.

A "merger problem" arises if an interpretation of the money laundering statute would mean that "nearly every violation" of another criminal statute "would also be a violation of the money-laundering statute[.]"  *See Santos*, 554 U.S. at 515–16.  In *Santos*, the Supreme Court held that, "in order to avoid a merger of the crimes of money laundering and operating an illegal gambling business, the term 'proceeds' in the money laundering statute must be construed to mean 'net profits,' not 'gross receipts,' of the illegal gambling business."  *Halstead*, 634 F.3d at 271 (citing *Santos*).  Otherwise, illegal lotteries that pay their winners—as all responsible lotteries do—would always violate the money laundering statute, which imposes much harsher penalties.  *Santos*, 553 U.S. at 516.  Without clear indications of congressional intent to implement such a scheme, that alternative construction ran afoul of the rule of lenity.  *Id.* at 514.  In *Halstead*, the Fourth Circuit

held that *Santos* applied retroactively on collateral review but narrowed its application.  634 F.3d at 271–72, 279.  While a defendant cannot be convicted of money laundering merely "for paying the essential expenses of operating [an] underlying crime[,]" no merger problem arises if "the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering[.]"  *Id.* at 279–80.

Oloyede argues that the financial transactions underlying the money laundering conspiracy charge were "substantially limited to the transfer of wire fraud conspiracy proceeds to and from alleged coconspirators."  ECF 922, at 7.  He contends that such transactions are "effectively 'essential expenses' and 'gross receipts,' not 'net profits'" as discussed in *Santos*.  *Id.*  Judge Grimm rejected an identical argument brought by Popoola.  ECF 992, at 8–10.  Judge Grimm reasoned that the money transfers identified in the indictment in this case "were not merely for the purposes of providing other coconspirators their share of the fraud proceeds."  *Id.* at 9.  Rather, as the Fourth Circuit noted on direct appeal, some transactions in this case were undertaken "solely to move money from one bank account to another" to conceal the funds.  *Oloyede*, 933 F.3d at 318.  Such transactions were not essential to the wire fraud conspiracy offense.  On this basis, other cases in which the Fourth Circuit had found merger problems were distinguishable.  *See United States v. Cloud*, 680 F.3d 396, 406 (4th Cir. 2012) (holding "payments to recruiters, buyers, and other coconspirators for the role each person played in the mortgage fraud scheme" were essential expenses of the underlying fraud); *United States v. Abdulwahab*, 715 F.3d 521, 531 (4th Cir. 2013) (holding payments used to persuade coconspirators to participate in the scheme were essential transactions).

Oloyede cannot establish prejudice.  Because some of the financial transactions underlying the money laundering conspiracy charge that were proven at trial were not essential to the wire

fraud conspiracy, a merger problem argument would not have been successful at trial or on appeal. His ineffective assistance of counsel claim for failure to move to dismiss the money laundering conspiracy charge based on a merger problem is denied.

### C. Claim Three

In his third claim, Oloyede criticizes his trial and appellate counsels' failure to argue that the evidence was legally insufficient to prove Counts Four and Six, separate instances of aggravated identity theft that occurred during the wire fraud conspiracy. Count Four charged that Oloyede, on June 1, 2012,

> during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another person . . . during and in relation to conspiracy to commit wire fraud under 18 U.S.C. § 1349, as charged in Count One[.]

ECF 1, at 17. Count Six charged the same regarding a different victim on October 2, 2012. *Id.* at 19. Oloyede's theory is that each wire fraud victim represented "a separate and distinct scheme" that terminated once the transmission of funds from the victim took place. ECF 922, at 9. Based on this premise, he argues that the evidence at trial showed that his uses of another's identity occurred after, rather than during, any of the wire fraud schemes.

Oloyede's claim fails for the reasons identified by Judge Grimm in his rejection of the same claim brought by Popoola. Both Popoola and Oloyede were charged with a wire fraud conspiracy that ran between "in or about January 2011 and May 18, 2015." ECF 1, at 5. The dates of Oloyede's two identity theft charges fall within this range. Oloyede, like Popoola, was convicted by a jury on each count. Oloyede did not challenge the sufficiency of the evidence on appeal, but the Fourth Circuit found there was sufficient evidence to uphold Popoola's identity theft conviction based on the same underlying evidence. *Oloyede*, 933 F.3d at 318 (noting "both Babatunde

[Popoola] and Oloyede were convicted of aggravated identity theft based on their use of" the same third-party information).

Like Popoola, Oloyede "does not cite any evidence or legal authority to support his theory that the identity theft was not related to the wire fraud," and his theory that each victim represented a discrete wire fraud offense is unpersuasive. *See* ECF 992, at 10. Rather, the conspiracy continued as the conspirators transferred proceeds between one another, defrauded other victims, and sometimes repeatedly defrauded the same victim. The identity thefts occurred during this overarching, multi-year scheme. Counsels' failure to raise this unsound argument was neither deficient nor prejudicial. Oloyede's third claim is denied.

**D. Claim Four**

In his fourth claim, Oloyede asserts that his trial counsel was constitutionally ineffective for advising him that he could not plead guilty unless the government extended a plea offer. As a result, Oloyede states, he proceeded to trial and received a harsher sentence than he would have if he had entered an open plea and avoided going to trial. A successful ineffective assistance of counsel claim at the plea-bargaining stage requires a showing that, but for counsel's deficient performance, the outcome of the plea process would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Oloyede must show that had he entered an open plea, his conviction or sentence "would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Judge Grimm rejected Popoola's version of this claim because he found Popoola's statement that he would have pleaded guilty without a plea agreement if he had known it was an option to be "simply not credible given his testimony at trial," in which Popoola maintained that "he was totally innocent of all charges[.]" ECF 992, at 11. The same is true in Oloyede's case,

even though the specifics of Oloyede's testimony as to his innocence are different.  At trial, Oloyede testified that he became suspicious in 2012 about the money other conspirators were depositing into his accounts, ended his participation at that time, and failed to notice other suspicious transactions.  *See* ECF 949-3.  The evidence at trial contradicted his testimony.  *Id.* Nonetheless, after he was convicted at trial, he maintained his innocence in his sentencing papers. ECF 403, at 5 ("Victor Oloyede maintains and believes that he is innocent.").  Additionally, Oloyede rejected two plea agreements offered by the government that did not require him to plead to all counts.  *See* ECF 951 (sealed exhibit containing emails related to plea negotiations).  Given the positions taken by Oloyede before, during, and after trial, it is not credible that he would have entered an open plea if advised of that possibility by his counsel.  Thus, trial counsel's purported failure to advise him of that option did not prejudice Oloyede with regard to his sentence.

Oloyede's fourth claim is denied.

**E.  Claim Five**

Finally, Oloyede claims that his trial and appellate counsel were constitutionally ineffective for failing to object to or challenge on appeal Judge Grimm's entry of (1) consecutive terms of imprisonment for Count One and Count Two and (2) consecutive terms of supervised release. Oloyede states that the court was "not authorized to impose the consecutive terms of imprisonment without first considering the Sentencing Guidelines' requirement that the terms be imposed concurrently" or "to impose consecutive periods of supervised release."  ECF 922, at 11.

Regarding the consecutive terms of imprisonment, Oloyede cites *United States v. Whitehead*, 660 F. App'x 219 (4th Cir. 2016) (unpublished), an unpublished Fourth Circuit case that considered a similar claim brought on direct appeal.  The court in *Whitehead* stated:

> Guidelines section 5G1.2 outlines the procedure for sentencing a defendant who is
> convicted in federal court of multiple criminal counts. If none of the counts of

conviction carries a statutory mandatory minimum sentence, "the court shall determine the total punishment and shall impose that total punishment on each such count, except to the extent otherwise required by law." *See* USSG § 5G1.2(b). If the total punishment is less than or equal to the statutory maximum sentence for at least one count of conviction, then "the sentences on all counts shall run concurrently, except to the extent otherwise required by law." *Id.* § 5G1.2(c). If, however, the total punishment exceeds the statutory maximum sentence on each count of conviction, the court "shall" impose consecutive sentences, "but only to the extent necessary to produce a combined sentence equal to the total punishment." *Id.* § 5G1.2(d).

*Id.* at 222.  The court then noted that the "[g]uidelines, of course, are merely advisory and are not binding on the district courts."  *Id.* (citing *United States v. Booker*, 543 U.S. 220, 245 (2005)). Thus, while a court's failure to correctly determine whether the guidelines recommend concurrent sentences constitutes procedural error, the error is harmless if it is "'certain' that the defendant's sentence would have been the same had the court correctly applied the [g]uidelines" and "'the sentence would be reasonable even if' the procedural error had not occurred."  *Id.*  (citing *United States v. Gomez*, 690 F.3d 194, 203 (4th Cir. 2012); *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011)).

It is certain that Judge Grimm would have imposed the same reasonable sentence whether or not he explicitly noted that the guidelines recommended concurrent sentences for Counts One and Two.  At sentencing, Judge Grimm stated:

This crime was a staggering crime.  It has [wreaked] havoc throughout the United States in the lives of these people who suffered this.  And if I didn't have any guidelines at all or if every single contested guideline factor was resolved in favor of the defendant under 18 U.S. Code 3553, I would impose the same sentence, because that's the sentence that I believe is sufficient, but not greater than necessary.

ECF 773, at 72.  As a result, Oloyede cannot establish prejudice relating to his counsels' failure to challenge the imposition of consecutive terms of imprisonment without an explicit finding as to whether the guidelines recommended consecutive or concurrent terms.

Regarding the alleged failure to object to consecutive terms of supervised release, Oloyede misunderstands his sentence.  Per the judgment, the terms of supervised release run concurrently for a total of three years.  ECF 429, at 3.[2]

## IV.    Certificate of Appealability

The accompanying Order is a final order adverse to Oloyede.  Thus, the Court must issue or deny a certificate of appealability.  Rule 11(a), *Rules Governing Section 2255 Cases in the U.S. Dist. Cts.*  Oloyede must receive a certificate of appealability before an appeal may proceed.  28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects a habeas petition on the merits, as here, a petitioner may satisfy this standard only by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Oloyede has failed to demonstrate that a certificate of appealability should issue.  He still may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See* Fed. R. App. P. 22(b).

## V.    Conclusion

Oloyede's § 2255 motion is denied.  The Court declines to issue a certificate of appealability.  A separate order follows.

Date: March 30, 2023

Deborah L. Boardman
United States District Judge

---

[2] At sentencing, the Court stated that some of the terms of supervised release would run consecutively.  ECF 773, at 70.  But the judgment provides that "all counts to run concurrent for a total of 3 years."  ECF 429, at 3.  The judgment controls.